UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X

JERRODE JOHNSON

                              Plaintiff,     **COMPLAINT**

              -against-

THE CITY OF NEW YORK; WARDEN JOHN/JANE
DOE # 1-3; SUPERVISOR C.O. JOHN/JANE DOES
1-5; C.O. USHER, C.O. DAVIS; CAPT
GAINES; CAPT BOYD; CAPT MURRO; CAPT          <u>Jury Trial Demanded</u>
DAVIS; CAPT GLEMAUD; C.O. SALLEY; C.O.
LEE; C.O. HYPPOLITE; C.O. JOHN/JANE DOES
# 1-10; NYPD P.O. JOHN/JANE DOES 1-10 the
individual defendant(s) sued individually
and in their official capacities,
                              Defendants.

------------------------------------------ X

### PRELIMINARY STATEMENT

         1.    This is a civil rights action in which plaintiff

seeks relief for the violation of plaintiff's rights secured by

42 U.S.C. §§ 1983 and 1988 and the Fifth, Eighth, and Fourteenth

Amendments to the United States Constitution, and the laws of

the State of New York.  Plaintiff's claims arise from incidents

that arose between July 2011 and March 2015.  During the

incidents, the City of New York, and members of the New York

City Police Department ("NYPD") and Department of Correction

("DOC") subjected plaintiff to, among other things, false

arrest, malicious prosecution, excessive force, failure to

protect, deliberate indifference, conspiracy, assault, battery,

negligence, intentional and negligent infliction of emotional

distress, negligent hiring, supervision, training, retention, and instruction of employees, and implementation and continuation of an unlawful municipal policy, practice, and custom.  Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.    This action is brought pursuant to 42 U.S.C. § 1983, and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

3.    Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law.  Plaintiff's notice of claim was duly filed on defendant City of New York within 90 days of the incident at issue.  More than 30 days have elapsed since such filing and the City of New York has refused to settle plaintiff's claims.  Moreover, this action has been filed within one year and 90 days of the incident that is the basis of this claim.  Plaintiff has made himself available for the 50-H hearing and will continue to do so.

4.    Venue is proper here pursuant to 28 U.S.C. § 1391 because the acts in question occurred in Bronx County, and the

City of New York is subject to personal jurisdiction in the Southern District of New York.

**PARTIES**

5.    Plaintiff Jerrode Johnson is a resident of the State of New York, Bronx County.

6.    At the time of the July 2011, incident plaintiff was 16 years old.

7.    From March 2012 to April 2015, plaintiff was a detainee assigned B&C 113-12-00738 being detained at various locations on Rikers including, the Robert N. Davoren Complex ("RNDC"), the George R. Vierno Center ("GRVC"), and the Otis Bantum Correctional Center ("OBCC").

8.    At all times referred to herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

9.    At all times alleged herein, defendant City of New York was the employer of the individual defendants, and was responsible for the policies, practices, and customs of the NYPD DOC, and maintained and operated the facilities on Rikers Island, located in the Bronx New York.

10.    At all times alleged herein, defendants Wardens John/Jane Doe # 1-3 were New York City Corrections Officers

employed at RNDC, GRVC, OBCC, or other as yet unknown DOC assignment, who violated plaintiff's rights as described herein.

11.    At all times alleged herein, defendant Supervisor C.O. John/Jane Doe # 1-5 were a New York City Corrections Officers employed at RNDC,GRVC,OBCC, or other as yet unknown DOC assignment, who violated plaintiff's rights as described herein.

12.    At all times alleged herein, defendant Supervisor C.O. John/Jane Doe # 1-5, were a New York City Correction Officers employed at the RNDC, GRVC, OBCC, or other as yet unknown DOC assignment, who violated plaintiff's rights as described herein.

13.    At all times alleged herein, defendants C.O. Usher; C.O. Davis; Capt Gaines; Capt Boyd; Capt Murro; Capt Davis; C.O. Lee; C.O. Hyppolite; C.O. John/Jane Does # 1-10 were New York City Correction Officers employed at the RNDC, GRVC, OBCC, or other as yet unknown DOC assignment, who violated plaintiff's rights as described herein.

14.    At all times alleged herein, defendants  NYPD Officers John Does 1-10; were NYPD Officers assigned toh the 77th precinct or other as yet unknown DOC assignment, who violated plaintiff's rights as described herein.

15.    The individual defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

16.    On or about June 1, 2012, at RNDC on Rikers Island, C.O. Usher threatened to break plaintiff's jaw.  C.O. Usher escorted plaintiff to an area with no Cameras, and punched plaintiff in the nose.  Capt Davis witnessed this assault and did nothing to stop it.  C.O. Usher, continued to beat plaintiff, and kneed plaintiff in the groin.  Plaintiff ran to an area where there were cameras for his safety, and plaintiff was sprayed with a chemical agent, handcuffed and taken to a decontamination room.

17.    Once in the decontamination room, C.O. John Does 1-10 started punching claimant.

18.    C.O. John Does 1-10 took claimant to the pens, and in order to cover up their misconduct, ordered plaintiff to tell the medical personal that "he was good".

19.    Plaintiff was charged with assault on staff.

20.    Plaintiff was placed in solitary confinement until August 2012.

21.    To further cover up their misconduct, C.O. Usher and other corrections staff denied plaintiff visits.

22.    Plaintiff was rearrested.

23.    All charges were dismissed.

24.    On or about July 24, 2014, in GRVC at approximately 11:30 P.M., C.O. John/Jane Does 1-10, members of

the probe team grabbed plaintiff, placed excessively tight handcuffs on plaintiff.

    25.   Plaintiff was cuffed to the rear.

    26.   John/Jane Does 1-10 threatened to "Fuck plaintiff up" in his cell, off camera.

    27.   John/Jane Does 1-10 carried plaintiff to his cell in a manner to intentionally cause plaintiff pain.

    28.   Inmate Maitland in cell 49 witnessed this illegal treatment, complained and C.O. John/Jane Does 1-10 told him to "shut the fuck up or he is next."

    29.   C.O. John/Jane Does 1-10, forced plaintiff to stand in the door frame of the "A" station, while an officer in the A station, repeatedly opened and closed the door on plaintiff, causing the door to strike him in the shoulder and chest with the intent of causing him injury.

    30.   Fearing for his safety plaintiff attempted ran to the middle of the housing area so other inmates could witness this misconduct.

    31.   Capt Gaines, sprayed plaintiff with a chemical agent, and tackled plaintiff to the ground.

    32.   Plaintiff requested medical treatment, but his request was denied.

    33.   Plaintiff did not recieve medical treatment for nearly 17 hours.

34.    On or about December 20, 2014, while in GRVC, C.O. John/Jane Does 1-10 sprayed plaintiff with a chemical agent.

35.    Fearing for his safety, plaintiff began to run away from the chemical agent.

36.    Plaintiff suffered a broken bone in his right hand.

37.    Plaintiff was then taken to intake.

38.    Once in intake, Capt Glemaud, ordered C.O. Salley "to spray that faggot".

39.    C.O. Salley complied with this unlawful order, and sprayed plaintiff with a chemical agent.

40.    Plaintiff was never decontaminated, and plaintiff was left in restraints for hours.

41.    Plaintiff requested medical treatment but his request was denied.

42.    Plaintiff was transferred to OBCC and placed in solitary confinement.

43.    It was not until December 21, 2014 when plaintiff received medical treatment.

44.    On or about December 30, 2014, plaintiff was taken to Bellevue Hospital for treatment.

45.    Medical personnel at Bellevue Hospital attempted to place the bone back into place, but their attempts were unsuccessful.

46.    Plaintiff was taken back to solitary confinement at OBCC.

47.    Plaintiff was never taken to Bellevue Hospital for his follow up appointment.

48.    On or about January 17, 2015 in OBCC 5, North at approximately 7:30 PM C.O. Hyppolite, was escorting plaintiff to intake from the visit floor.

49.    Plaintiff told C.O. Hyppolite that he had not had a shower in 6 days, and requested to speak to a deputy warden.

50.    C.O. Hyppolite, denied his request, and told plaintiff to "take your ass in his cell" or words to that effect.

51.    When C.O. Hyppolite and plaintiff arrived at the housing area, a deputy warden was doing a tour.

52.    Plaintiff attempted to speak to the deputy warden.

53.    In order to prevent plaintiff from reporting the substandard conditions of OBCC and to cover up their misconduct, before plaintiff could speak, C.O. John Does 1-10 knocked plaintiff to the ground.

54. C.O. John Does 1-10 jumped on plaintiff's neck and slammed plaintiff's head into the floor.

55. Plaintiff complained that he could not breathe and was rendered unconscious.

56. The deputy warden ordered them to get off of plaintiff's neck and only after numerous orders did they comply.

57. To cover up their misconduct, C.O. John Does 1-10 prepared a false report that plaintiff had committed assault on staff, and plaintiff was given a notice of infraction.

58. The infraction was dismissed.

59. On or about March 17, 2015 in GRVC, housing area 3B, Plaintiff requested to go to Medical for his broken hand.

60. Captain Davis denied plaintiff's request.

61. Plaintiff got on his knees, and the probe team came in.

62. Captain Boyd, the probe team Captain, ordered a C.O. to spray plaintiff with a chemical agent.

63. The C.O. stated told Captain Boyd that, he plaintiff was on his knees.

64. Captain Boyd ordered the C.O. to spray anyway, and the C.O. complied with this unlawful order, and sprayed plaintiff with a chemical agent.

65. The C.O.s then cuffed plaintiff.

66.    Plaintiff asked to go to the clinic, but his request was denied.

67.    Captain Boyd ordered that the plaintiff be taken to 5A to be decontaminated.

68.    Plaintiff asked why he was going to a different housing area to be decontaminated.

69.    Captain Boyd stated that plaintiff was going to a special decontamination area.

70.    Plaintiff once again requested to go to the clinic, and stated that he could not breathe.

71.    Plaintiff was rendered unconscious.

72.    Captain Boyd accused plaintiff of faking an Asthma attack, and ordered the C.O.s to "him again, and make feel it".

73.    A C.O. sprayed plaintiff from head to groin, and other C.O.s kicked and punched plaintiff.

74.    The C.O.s threw plaintiff in hot water.

75.    Plaintiff was not properly decontaminated or provided medical attention in a timely fashion.

76.    C.O.s dragged plaintiff out of the shower and threw him in a cell.

77.    On or about July 2011, on St. Marks place, between Albany and Kingston Avenues, P.O. John Does 1-10,

operating from the 77th precinct, falsely arrested and maliciously prosecuted plaintiff.

78.   Plaintiff was attending a memorial service, when police officers without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime ordered plaintiff to come over.

79.   Plaintiff complied with the order.

80.   NYPD P.O. John/Jane Does 1-10 falsely and maliciously told Plaintiff that he had been identified as a suspect in a burglary.

81.   Plaintiff was arrested and charged with burglary.

82.   Plaintiff was held on Rikers Island.

83.   The charges were dismissed after a grand jury refused to indict plaintiff.

84.   Upon information and belief, the officers used unconstitutional methods to identify plaintiff.

85.   The aforesaid events are not isolated. Defendants City of New York, Warden John/Jane Doe # 1, have been aware (from lawsuits, notices of claim and complaints) that many of the DOC's officers are insufficiently trained on the proper way to protect detainees, provide medical care, interact with detainees, and how not to act with deliberate indifference.

86.   Defendants City of New York, Warden John/Jane Doe # 1, are further aware that such improper conduct and training has often resulted in a deprivation of civil rights.  Despite such notice, defendants City of New York, Warden John/Jane Doe # 1, have failed to take corrective action.  This failure caused the officers in the present case to violate the plaintiff's civil rights.

87.   Moreover, defendants City of New York, Warden John/Jane Doe # 1, were aware prior to the incident that C.O. Usher; C.O. Davis; Capt Gaines; Capt Boyd; Capt Murro; Capt Davis; C.O. Lee; C.O. Hyppolite; C.O. John/Jane Does # 1-10 lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as officers.  Despite such notice, defendants City of New York, Warden John/Jane Doe # 1, have retained these officers, and failed to adequately train and supervise them.

88.   At all times defendant City of New York by the DOC, and its agents, servants and/or employees, negligently, carelessly, and recklessly trained the individual defendants for the position of correction or correction officers.

89.   At all times defendant City of New York by the DOC, and its agents, servants and/or employees, negligently, carelessly, and recklessly supervised, controlled, managed,

maintained, and inspected the activities of the individual DOC defendants.

90.    At all times defendant City of New York by the DOC, and its agents, servants and/or employees caused, permitted, and allowed the individual defendants to act in an illegal, unprofessional, and/or deliberate manner in carrying out their official duties and/or responsibilities.

91.    At all times defendant City of New York by the DOC, and its agents, servants and/or employees negligently, carelessly, and recklessly retained in its employ, the individual DOC defendants, who were clearly unfit for their positions, who acted in an illegal, unprofessional, and/or deliberate manner in carrying out their official duties and/or responsibilities.

92.    The occurrence(s) and injuries sustained by plaintiff, were caused solely by, and as a result of the negligent, malicious, reckless, and/or intentional conduct of defendant City of New York, and the DOC, and its agents, servants and/or employees, as set forth above, without provocation on the part of the plaintiff contributing thereto, specifically, the reckless manner in which said defendant hired, trained, supervised, controlled, managed, maintained, inspected, and retained the individual DOC defendants.

93.    At no time did plaintiff unlawfully resist or assault any detainee or officer at any time during the above incidents.

94.    Plaintiff did not engage in prohibited, suspicious, unlawful, or criminal activity prior to or during the above incidents.

95.    The individual defendants did not observe plaintiff engage in prohibited, suspicious, unlawful, or criminal conduct at any time prior to or during the above incidents.

96.    At no time prior, during, or after the above incidents were the individual defendants provided with information or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had engaged in prohibited, suspicious, unlawful, or criminal conduct.

97.    The individual defendants acted in concert committing the above-described illegal acts toward plaintiff.

98.    The defendants acted under pretense and color of state law and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of their rights.

99.   As a direct and proximate result of defendants'
actions, plaintiff experienced personal and physical injuries,
pain and suffering, fear, an invasion of privacy, psychological
pain, emotional distress, mental anguish, embarrassment,
humiliation, and financial loss.

### FIRST CLAIM

### (EXCESSIVE FORCE)

100.   Plaintiff repeats and realleges all the foregoing
paragraphs as if the same were fully set forth at length herein.

101.   The individual defendants' failure to protect and
intervene was objectively unreasonable.

102.   Accordingly, defendants are liable to plaintiff,
pursuant to 42 U.S.C. § 1983; and the Fifth, Eighth, and
Fourteenth Amendments to the United States Constitution.

### SECOND CLAIM

### (42 U.S.C. § 1983 CONSPIRACY)

103.   Plaintiff repeats and realleges all the foregoing
paragraphs as if the same were fully set forth at length herein.

104.   Defendants are liable to plaintiff because they
agreed to act in concert, with each other, to inflict
unconstitutional injuries; and committed overt acts done in
furtherance of that goal causing damage to plaintiff.

### THIRD CLAIM

**(ASSAULT)**

105.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

106.  Among other things as described above, excessive use of force against plaintiff placed him in fear of imminent harmful and offensive physical contacts.

107.  Accordingly, defendants are liable to plaintiff under New York State law for assault.

### FOURTH CLAIM

**(BATTERY)**

108.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

109.  Among other things as described above, defendants' failure to protect and excessive use against plaintiff were illegal physical contacts.

110.  Accordingly, defendants are liable to plaintiff under New York State law for battery.

### FIFTH CLAIM

**(NEGLIGENT SUPERVISION, HIRING, SUPERVISION, MONITORING, TRAINING AND RETENTION OF UNFIT EMPLOYEES)**

111.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

112.  Defendant City of New York is liable to the plaintiff because the occurrence and injuries sustained by

plaintiff, were caused solely by, and as a result of the malicious, reckless, negligent, and/or intentional conduct of defendant City of New York, and the DOC, its agents, servants and/or employees, as set forth above, without provocation on the part of plaintiff contributing thereto, specifically, the negligent and reckless manner in which said defendant hired, trained, supervised, controlled, managed, maintained, inspected, and retained its correction officers.

## SIXTH CLAIM

### (INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

113.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

114.    That by virtue of the occurrence and defendants, individually and/or by their agents, servants and/or employees, negligently and/or intentionally inflicted emotional harm upon plaintiff.

115.    The defendants' actions against plaintiff were extreme and outrageous and caused plaintiff severe emotional distress.

116.    The defendants breached a duty owed to the plaintiff that either unreasonably endangered plaintiff's physical safety, or caused the plaintiff to fear for his own safety.

### SEVENTH CLAIM

#### (NEGLIGENCE)

117.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

118.  Defendants are liable to plaintiff because defendants owed plaintiff a cognizable duty of care as a matter of law, and breached that duty.

### EIGHTH CLAIM

#### (FAILURE TO INTERVENE)

119.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

120.  Defendants had a reasonable opportunity to prevent the violations of plaintiff's constitutional rights, but they failed to intervene.

121.  Accordingly, the defendants are liable to plaintiff for failing to intervene to prevent the violation of plaintiff's constitutional rights.

### NINTH CLAIM

#### (FALSE ARREST UNDER FEDERAL LAW)

122.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

123.  Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable

cause, or reasonable suspicion that plaintiff had committed a crime.

124. Accordingly, defendants are liable to plaintiff for false arrest under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## TENTH CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)

125. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

126. Defendants unlawfully stopped and searched plaintiff without cause, a warrant, or consent.

127. Accordingly, defendants are liable to plaintiff for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## ELEVENTH CLAIM

### (MALICIOUS PROSECUTION UNDER FEDERAL LAW)

128. Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

129. The individual defendants are liable to plaintiff for malicious prosecution because prior to any grand jury action, with intent, knowledge, and malice, the defendants initiated a malicious prosecution against plaintiff by drafting and signing a sworn criminal court complaint and police reports

that provided false information to the court, alleging plaintiff had committed various crimes.

130.   The individual defendants lacked probable cause to believe the above-stated malicious prosecution could succeed.

131.   The individual defendants initiated the above-stated malicious prosecution to cover up their illegal and unconstitutional conduct and force plaintiff into informing on his criminal case co-defendants and other individuals.

132.   The above-stated malicious prosecution caused a sufficient post-arraignment liberty restraint on plaintiff.

## TWELTH CLAIM

### (MONELL CLAIM DOC)

133.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

134.   Defendant City of New York, through a policy, practice, and custom, directly caused the constitutional violations suffered by plaintiff.

135.   Upon information and belief, defendant City of New York, at all relevant times, was aware that the defendants were unfit officers who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

136.   Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.  Moreover, upon information and belief, defendant City of New York failed to adequately investigate prior complaints filed against the individual defendants.

137.   Further, defendant City of New York was aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice, and/or policy) would commit the illegal acts described herein.

138.   In addition, the following are municipal policies, practices, and customs: (a) acting with deliberate indifference to a risk of serious injury; (b) failing to protect individuals; and (c) covering up misconduct.

### (MONELL CLAIM NYPD)

139.   Defendant City of New York through the NYPD and its officers, committed the following unconstitutional practices, customs, and policies against plaintiff: (1) unlawfully stopping and searching innocent persons; (2) wrongfully arresting innocent persons in order to meet productivity goals; (3) wrongfully arresting individuals based on pretexts and profiling; (4) using unreasonable force on

individuals; and (5) fabricating evidence against innocent
persons.

140.   Upon information and belief, defendant City of
New York, at all relevant times, was aware that the defendants
were unfit officers who have previously committed the acts
alleged herein, have a propensity for unconstitutional conduct,
or have been inadequately trained.

141.   Nevertheless, defendant City of New York
exercised deliberate indifference by failing to take remedial
action.  The City failed to properly train, retrain, supervise,
discipline, and monitor the individual defendants and improperly
retained and utilized them.  Moreover, upon information and
belief, defendant City of New York failed to adequately
investigate prior complaints filed against the individual
defendants.

142.   Further, defendant City of New York was aware
prior to the incident that the individual defendants (in
continuation of its illegal custom, practice, and/or policy)
would stop, arrest and prosecute innocent individuals, based on
pretexts and false evidence.

143.   The existence of the aforesaid unconstitutional
customs and policies may be inferred from repeated occurrences
of similar wrongful conduct involving the individual defendants,
placing the defendant City of New York on notice of the

individual defendants' propensity to violate the rights of individuals.

144.   In addition to frequently violating the civil rights of countless residents of New York City, numerous members of the NYPD commit crimes.  Officers have been arrested and convicted of such crimes as planting evidence on suspects, falsifying police reports, perjury, corruption, theft, selling narcotics, smuggling firearms, robbery, fixing tickets, driving under the influence of alcohol, vehicular homicide, assault, and domestic violence. In fact, former NYPD Commissioner Bernard Kerik was convicted of corruption-related crimes in federal and state courts and served time in federal prison.  In 2011, Brooklyn South Narcotics Officer Jerry Bowens was convicted of murder and attempted murder in Supreme Court, Kings County, while under indictment for corruption and is presently serving a life sentence.  In 2011, Police Officer William Eiseman and his subordinate Police Officer Michael Carsey were convicted of felonies in Supreme Court, New York County, for lying under oath, filing false information to obtain search warrants and performing illegal searches of vehicles and apartments.  In 2012, New York City Police Officer Michael Pena was convicted in Supreme Court, New York County, of raping and sexually assaulting a woman at gunpoint and is presently serving a sentence of 75 years to life.

145.    The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

146.    The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the NYPD were the moving force behind the constitutional violations suffered by plaintiff as alleged herein.

147.    The City's failure to act resulted in the violation of plaintiff's constitutional rights as described herein.

**THIRTEENTH CLAIM**

**(RESPONDEAT SUPERIOR)**

148.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

149.    The individual defendants were acting within the scope of their employment as New York City Correction Officers when they committed the above described acts against the plaintiff, including failing to protect, assaulting, and battering the plaintiff.

150.    The City of New York is therefore vicariously liable under New York State law for the aforesaid torts.

**WHEREFORE,** plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.    Compensatory damages in an amount to be determined by a jury;

b.    Punitive damages in an amount to be determined by a jury;

c.    Costs, interest and attorney's fees, pursuant to 42 U.S.C. § 1988; and

d.    Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:    New York, New York
          July 19, 2015

                        ADAMS & COMMISSIONG LLP.
                        *Attorneys for Plaintiff*
                        65 Broadway Suite 715
                        New York, NY 10006-2503
                        (212) 430-6590
                        martin@amcmlaw.com

                        _____
                        MARTIN E. ADAMS, ESQ